Thank you, Your Honor, and may it please the Court. Good morning. Paul Barr, Federal Defenders, on behalf of Douglas John Miller, Jr. The District Court in this case relied on hearsay testimony to sustain the Grade A supervised release violation against Mr. Miller. Because the hearsay was admitted contrary to this Court's holding in U.S. v. Comito, and in violation of Mr. Miller's due process right to confrontation, the Court should reverse and remand. Here, the Court must weigh the defendant's right to confront against the government's good cause for denying that right. And when we look at the right to confront, that itself is composed of two factors for the Court to consider. First, the importance of the evidence, and then the nature of the evidence or the reliability of the evidence. Speaking briefly about the importance of the evidence in this case, I think it's fair to say that it was the essential piece of evidence. Without the hearsay testimony admitted through Officer Baker, there is nothing to say that there even was an assault, much less to say that Mr. Miller was linked to that assault. I think there's no question that the evidence in this case was critical. But what about the high indicia of reliability, the corroboration involved, which I think factually makes this a very different case than the Comito scenario? Thank you, Your Honor. First, we must start with the proposition which was enunciated in Comito, that unsworn verbal allegations are in general the least reliable type of evidence, the least reliable type of hearsay. So that's the starting point. That's the baseline. From there, it becomes the government's task to try and prove that there are indicia of reliability here. The government spends a good deal of time in its papers trying to argue that these statements fall within one of the traditional hearsay exceptions, either an excited utterance or a present-sense impression. The district court never made those findings, and there are no facts in the record to support such a finding. With respect to the other evidence, yes, there is some evidence in the record that would corroborate, tend to corroborate the reliability of the statements. But that's true in every case. What is that? The corroborating evidence? What makes it reliable? Well, the evidence that the government points to, Your Honor, are the scene where there was blood, where Mr. Miller was apprehended, Mr. Martinez's ID, all the things that were found at the scene after the police officers. I thought the victim said that there were three people involved in the incident. What Martinez said actually was that there were four assailants. Right, the wife, the girlfriend. The girlfriend and her three sons, yes. But did Martinez ever say that Miller? Correct, Your Honor. Was actually one of the ones that punched him? According to Officer Baker, that is what Officer Baker testified, that Mr. Miller, my client, specifically was named. That's what Officer Baker testified to. So, Your Honor. I thought he just testified that there were three, the three sons. No, Your Honor. And that Mr. Miller was one of them. Right, that he was specifically named. But he could have been named, but was he one of the ones that, did he actually say that Miller punched me? Those words were not uttered. They were not part of the record. I don't know exactly, obviously, what Martinez told Officer Baker, but what Officer Baker testified to was that there were four, that Ms. Miller's sons had assaulted him, and he specifically named my client. That's what Officer Baker said. But, again, even in Comito, there were facts in the record that tended to corroborate the hearsay statements, as well in U.S. Hall. So it's really a matter of a spectrum of determining, you know, which facts in the record are of such a nature to corroborate the statements to actually make them reliable. Again, this court found in Comito that there was corroboration in the record. For example, there the allegation was that the defendant had been taking unauthorized payments, withdrawals from a victim's account, and there was evidence that money had been deposited. I thought in Comito we said unsworn allegations, the least reliable type of hearsay, and the particular utterances at issue here bore no particular indicia of reliability. Correct, Your Honor. Because there the victim knew that somebody had used her bank cards and she didn't authorize it, but there was no evidence that Mr. Comito was the person who had actually done the unauthorized purchases. Correct? Well, I think that might have been part of the issue. The other issue was that whether or not Mr. Comito actually had permission to take withdrawals, because he said that he had been withdrawing money from the account, but the part of the defense was that he had permission to do that. The point being is that there was some evidence to corroborate the initial hearsay statements that in that case that these withdrawals were unauthorized, and here that Mr. Miller was the assailant. And so the court is then tasked with looking at the totality of the circumstances to determine whether all things being considered, those factors. So here, even if these statements don't rise to the level of being excited utterance, you've got a victim who the police contacted immediately after the statement. He's all bloodied up. He makes a statement as to who actually did the crime. He pinpointed specifically to Mr. Miller. The officer immediately went to the scene. I think it was like a block away, right, and saw blood trails leading to the defendant's shoes and found the victim's I.D. and phone there. That level of corroboration is not enough? It's my contention that it is not, Your Honor. And it's quite a bit different from the corroboration that this court found sufficient in U.S. v. Hall, where in particular in that case there was a precipient witness who testified at the hearing who said, yes, I saw the defendant hit the victim. Right. The defendant himself had made it. Let's talk about Hall, because in Hall there was also a false imprisonment charge where there was no corroboration. How do you think that plays into the analysis in this case? Well, this court found that there was corroboration. It looked at that other evidence that I'm mentioning there to say that the hearsay statements were sufficiently reliable and that they could be admitted for that reason. It noted that Mr. Hall had a strong interest in confronting, but it also noted that the statements were highly reliable because of all these other factors, these other witnesses, the other evidence that was indisputably admissible at the hearing. Right. But in Hall there was two different types of conduct. There was the hitting of the victim, which was witnessed by a third party. So that's pretty substantial corroboration. And there was also a charge of false imprisonment, which we found to be not corroborated because that came primarily from the victim's account. Do you think that in that case the corroboration on the other charge spilled over to the false imprisonment? Yes, absolutely, Your Honor. I think that the court explicitly said that. It bootstrapped a little bit there and said these statements are reliable because we've already sort of found these other statements in the context of the assault are reliable. So there's absolutely some spillover there. I think that's quite explicit in the court's reasoning. I do want to talk just briefly about the other reasons why that evidence is unreliable, Your Honor. First, as I mentioned in my papers, Mr. Martinez was drunk at the time. He was habitually drunk. Officer Baker said that he would frequently encounter him intoxicated in the neighborhood. And he just, as the court has already noted, suffered a pretty serious trauma to the head and face. Now, again, it's my contention that without the hearsay statements there's no evidence even that an assault took place that's very plausible under the conditions that Mr. Martinez found himself that night that he could have fallen down those very stairs where his ID and the blood were found. Importantly, Your Honors, I also want to talk about the good cause here in this case. The government's efforts to find Martinez were just entirely unsatisfactory. They took place about three weeks before the hearing, notwithstanding the fact that the hearing was six months after the incidents in question here. And the officers just did not do any of the things that we would normally expect police officers to do when they're making earnest, good-faith attempts to find one. But they went back to the residence where he lived. On one day, the officer went to the residence. And they confirmed that he lived, that his current, when they checked on his ID, if his address had changed, it still reflected the location of the incident. Well, that's right. Officer Ashton, on cross-examination, after she had said, these are the two things that I did to try and find Martinez, when I was questioning her, then said, oh, yeah, and I also ran his name through records, and that was the only address that I could find. But they didn't do any of the things that you would expect. They didn't talk to the neighbors. They didn't go to the post office. They didn't check with other law enforcement agencies. They didn't put a bolo out for Martinez. Did they try and find the girlfriend? They didn't, as far as I know, no. Officer Ashton didn't testify that she did. Now, the victim indicated that he didn't want to prosecute. Is it fair to say that he would have been an uncooperative witness? I don't think it's fair to say that at all, Your Honor. There is some indication in the record that back in January, Martinez indicated that he didn't want to participate in the prosecution on the state case against Mr. Miller. But, again, that's six months prior. And it's clear that the government in this case wasn't relying on that statement because they did make efforts three weeks prior to the hearing to try and find him, although, as I would argue, they were completely disaltering and inadequate efforts to try and locate Martinez. So, Your Honors, I'm about out of time. The little time I do have, I'd like to preserve for a while. That's fine. May it please the Court, Lawrence Kasper for the Appellee of the United States. Your Honors, the hearsay statements identifying Miller as the assailant were made near the assault scene while blood was still running down the victim's face, were fully corroborated by the independent evidence, and were balanced against reasonable efforts to locate the victim. The district court properly balanced the committee of factors weighing Miller's interest in confining complications. How were the efforts reasonable? Your Honors, he... You stopped by the apartment once, found out that he left, and then had a cell phone number, called it, but didn't leave a message. Was that the extent of the effort to locate the victim? No, Your Honor. There were multiple efforts. It was a multifaceted effort by the police officers here. They did check for the last known address for the victim. They came, as Judge Paez indicated, it came back to the address where they had resided together. We sent the officer to that location. The officer went inside the location, interviewed the individual, looked for items within the residence that might tend to show that the individual was still there. Clearly, the victim was no longer residing there. As a last measure, we made this phone call effort was made in addition to the other efforts. That effort was unsuccessful, and I understand that the district court had some reservations about that one piece of the effort to locate the victim. But remember, this came on the heels of knowing that the victim would not cooperate with the state. In addition, the defense itself made efforts to locate the victim and couldn't do so. So with all of that, we do believe that these efforts were sufficient, they were reasonable. When did they learn, when did the police learn that he wouldn't cooperate? My understanding of the chronology is that several days after the assault, the police determined that he would not cooperate. So then for six months, they knew that he wasn't going to cooperate. The police may have known that. My office first received this case in the April-May time frame, and in June, we received that information. We made these additional efforts to locate the victim to try to do that. Did the probation officer make any effort to locate the victim? The probation officer did not. There's no evidence in the record that the probation officer made additional efforts to locate the victim, Your Honor. You had other, what do you call it, allegations that were not really tied to this particular incident? There were four grade C allegations, which ultimately were sustained by the district court or not at issue before this court. Your Honor, let me come back. But it's this charge that carries the highest penalties. This charge does carry the highest penalties. I would note, however, that the court here sentenced below the guidelines for the grade A violation. The court sentenced to 12 months. The grade A low end was 15 months. The high end of the grade C was 10 months. But, Your Honors, the statement here was made nearly contemporaneously with little chance for reflection. While there's sufficient evidence in the record to permit this court to make a finding that this was an excited utterance or present sense impression, we don't believe that's necessary, regardless of whether it fits that strict definition. The point is that the statement carried with it a high degree and indicia of reliability. It was made shortly after the beating, while the victim was at the doorstep of the Good Samaritan, who had called the police and had not yet been transported to the hospital. Moreover, the evidence introduced during the revocation hearing lent tremendous credibility to the victim's statements. And it's important to go through each of those items, because the substantial evidence at the crime scene limited Miller's interest in confrontation and showed by a preponderance and more that Miller was involved in the assault. Miller, who resides an hour away in Campo, California, pages 81 and 89 of the record, is found at the scene of the assault after midnight in close temporal proximity to the assault and within one block of where the victim is located. Police find a wet blood trail leading from Miller's mother's apartment, where the victim then resided, to Miller, pages 37, 40, and 43. In the midst of the blood trail on the stairway near Miller's mother's apartment, pages 43, 44, and 60, police located the victim's California identification card, again within 60 feet of where Miller is found. Miller has blood splatter on his shoes, as testified to by both police officers, pages 32 and 57, and minor abrasions on his leg that one officer testified was a fresh abrasion, page 59. This evidence is Miller's involvement. There were also photos taken of the victim, pages 127, 128, and of Miller, 129 and 130, which certainly show by a preponderance, and remember the standard here is a preponderance standard, who in fact was victimized and in fact that the victim didn't simply fall. In fact, Officer Baker observed substantial facial injuries, page 29, and Miller himself required absolutely no first aid. By a preponderance, and I'd urge the court to look to the Second Circuit's decision in Chinn, where similar evidence was held to have indicated that an assault took place and the recent vintage of that assault, page 124 of that case site. Here too, Your Honor, as in unlike in Comito, the supporting evidence here was not hearsay. As in Hall, here too, the physical evidence corroborated and fully corroborated the victim's account, as Judge Winn has already indicated by her questionings. These indicia of reliability lend significant credibility to the victim's account. These factors lessen Miller's interest in confrontation. This court, however, need not find that the hearsay evidence was not important to affirm the district court. In fact, this case closely resembles a Campos decision, an unpublished decision cited in our brief at 374 Fed Appendix 732. In that case, a supervised release case in which Campos allegedly committed a bank robbery and violated supervised release in so doing. There, this court held that although hearsay evidence was important to the district court's findings, Campos' confrontation interest was weak because the evidence was reliable and he could identify no witness that might bring the veracity of the evidence into question. In Campos, the supporting evidence, Your Honors, included surveillance photographs from the bank robbery showing the releasee at the bank near the time of the robbery, akin to the evidence in this case showing the temporal proximity between the defendant, the appellant, and the scene of the crime. In addition, police records in that case showed a significant number of $20 bills stolen from the bank and Campos was arrested with a significant number of dollar bills. Similar to the evidence, including the physical evidence, the blood found on the sneakers, the observations of the officers, and the location of the appellant at the scene of the crime. So there, the court held that there was reliable, uncontroverted evidence to find that Campos had committed the robbery. So, too, here is there reliable, uncontroverted evidence to find that Miller committed the assault. Now, Your Honor, and I know we've talked about the good cause, but it's important to understand from the outset that the government did not know the whereabouts, but we did make reasonable, good faith efforts to locate the victim. Well, the San Diego Police Department did, I guess at your behest. At our behest, the San Diego Police Department did make those efforts, Your Honor. Did the probation officer have a warrant issued for the arrest? The probation officer did have a warrant issued for the arrest of the defendant in this case. He did not have any. There was no warrant outstanding for the victim in this case, but obviously that arrest warrant with respect to the defendant was satisfied, and we proceeded with this case beginning. Well, the victim wasn't reporting to the probation officer. I'm sorry, Your Honor? Was the victim reporting to his probation officer? To my knowledge, Your Honor, the victim was not on probation during this period. Now, the victim had a criminal record or at least a record of intoxication, but to my knowledge there was nothing to indicate that he was unsupervised, released, or otherwise had any reporting obligations. But as I said, the officer did check law enforcement databases and other addresses to locate the victim. And so, Your Honor, these efforts and circumstances differ vastly from Comito. Can I ask you one other question? Sure. At the end of the hearing, did the judge actually balance, do the balancing test? Your Honor, and I think that's an important question here. The hearing just kind of comes to an end. He criticizes the way in which they went looking for this victim. I see my time is up. Oh, go ahead. I don't really see it. He doesn't really seem to engage in it. And, Your Honor, there's no requirement that the court tick off each of the Comito factors in reaching an analysis. There are no magic words here. But the record shows that the court had read Comito, page 104. He was familiar with the balancing requirement, page 105. In fact, he was specifically informed by defense counsel regarding the Comito balancing test, and the parties extensively argued the factors. Page 93 was the defense's recitation. Judges are presumed in this court to know the law, and there's no showing that the court below expressly misstated that test. So we do believe that the evidence here was sufficient on that issue. And for these reasons and those stated in our brief, we would ask that the court affirm the revocation of Miller's supervised release on the Grade A violation. Okay. Three really quick points, Your Honor. The interest in confrontation was very high here because without the hearsay evidence, there's no evidence that an assault took place, much less that Mr. Miller was involved. I'd encourage the court to look at the photos cited by the government, 127 to 130 of the record, because I think they belie the government's explanation of the sequence of events. The injuries sustained by Martinez do not match up with the appearance of Mr. Miller at the time of his arrest. And finally, it's critical to understand that Officer Baker and Officer Ashton both testified that they themselves were not aware at any time that Martinez had indicated a lack of desire to cooperate. So it should not be attributed to Ashton that she gave up because she knew Martinez had previously indicated a desire not to cooperate. That was not something that she herself knew. Well, you know, the one photo of Martinez, I mean, his face was – looks like he got hit pretty hard. There's no denying that he suffered serious – Exhibit number one. Suffered serious injuries in this case, Your Honor, and that's not the issue. The issue is how did he sustain those injuries. And again, he was intoxicated. Officer Baker testified that he could smell the alcohol coming off of Martinez when he was dealing with him at first instance, and that he is a well-known public drunk who has had a variety of other violations of the law, including trespassing and domestic violence disputes. At least three times police have come to the apartment to deal with domestic violence disputes between Martinez and Ms. Miller. So I think it's certainly at least as plausible that those injuries were sustained in some other fashion than the way that the government is suggesting. So thank you, Your Honors. Thank you, Counsel. The matter is submitted.
judges: Pregerson, Paez, Nguyen